21, 2179. Mr. Atkinson, whenever you're ready. Good morning, Judge Park. My name is Cameron Atkinson. I represent the appellants v. the Patriots USA, Diane Bono, Michelle Melendez, and Michelle Sienkowski. May I reserve two minutes for rebuttal, please? We'll allow it. Thank you, Your Honor. This case is at least the second time in two years that a New York governor has made sincerely held religious beliefs. Could you lean forward a little, with a mask and all. I apologize, Your Honor. No, no, don't apologize. Just lean forward. This case is at least the second time in two years that a New York governor has made sincerely held religious beliefs, the specific target of a pandemic. Is it your, I'm sorry to interrupt you, you're not even through your first sentence, but do I understand from your papers that you've filed that the court, that the state is not obeying the northern district's injunction? From my perspective, yes, that's correct. Your perspective, what does that mean? Because that's a very, we were, our order made reference to that, and So Governor Hochul has made public comments, made public announcements that she would deploy the National Guard upon the termination of health care workers. She told... I know, but the question is whether that's going to happen before or after the injunction. I mean, it's a big difference. If it's happening now, and you said in your papers that you just filed that two of, depending on how you read it, that two of your clients essentially have been fired or not allowed to go in there, that would suggest to me that the state is not obeying the injunction. I want to know if that's your position. That would be our position, Your Honor. Would be or it is yours? Yes, sir. Have they been fired by the state or fired by some non-state employer? They've been fired by a non-state employer, Judge, but the perpetuates for their firing has been Regulation 2.61. The TRO issued by the Northern District, as I understand it, told the state not to put the regulation into effect pending the hearing on the preliminary injunction in the Northern District. And it wasn't an injunction against private employers. It was an injunction directed against the state. So the fact that if it's true, as you say, that a private employer has fired somebody for not getting vaccinated, that's not the state disregarding the TRO. That's a private employer doing it itself. In a traditional context, yes, Your Honor. But in this case, we have Governor Hochul making public statements that God wants you to get the vaccine, that there are no religious, legitimate religious exemptions. Saying that God wants you to get the vaccine is different from saying you've got to fire people under state law if they don't get the vaccine. It's overt pressure on these employers to commit those firings, Your Honor. I would assume that it's protecting to say God wants you to get it as God prohibited you from getting it. If Governor Hochul was speaking as a private citizen, Your Honor, unquestionably, the First Amendment would protect her speech in that case. But she was not enjoined. She was not enjoined from urging people to get the vaccine or from suggesting that that was something that was viewed favorably by God. No, not at all, Your Honor. We would never ask for such a gag order. What we are specifically focused on here is their comments that there are no legitimate religious objections to getting the vaccine. Judge Sachs' question was whether the state is deferring enforcing its rule, its regulation, pending the situation with regard to the temporary restraining order in the Northern District. And I understand your answer to have given us no information with regard to the answer to that question. To be candid, Your Honor, I'm not aware of any specific incidences where they have gone to an employer and said, if you do not enforce this regulation, we're going to fine you, we're going to take you to court. Why don't you go on with your argument? Well, if I could follow up, Counsel, what's the status of your clients? I believe they were, one of them was supposed to be terminated a week ago or so, and two of them were told they would be. And I'm wondering if that's happened or what. Ms. Melendez and Ms. Bono have been informed that they will be terminated on a rolling basis. What does that mean? It could mean after the injunction expires. Correct, but as I understand what has been told to them right now, their employer's currently been prioritizing who to terminate first and that it's only a matter of time. So are they on administrative leave? No, they worked shift last night, yes. Okay. Ms. Sienkowski has been given, has had her religious exemption reinstated per the Northern District's order, but she also works within the Northern District's jurisdiction as well. And on that note, that's what I've been attempting maybe unclearly to state is these terminations are coming at the impetuous of this regulation, at the impetuous of Governor Volkow's public comments, et cetera. And those public comments, the Supreme Court has specifically termed religious special hostility toward religious police in Masterpiece Cakeshop. This court considered that issue in Roman Catholic Diocese versus Colmo. New York cannot target religion for specific special disabilities based on the fact that it just does not agree. What would our injunction do? It wouldn't enjoin the state from urging people to do it, would it? What happens, let's assume we grant the injunction that you're seeking, the temporary injunction that you're seeking. What effect does that have on the ability of your client's employers to say, under all the circumstances, we're letting you go? It gives me the ability to go back to those employers and say, I have an order from the Second Circuit staying this regulation until they can hear the appeal on the merits. Do not say that now with respect to the order of another federal court? I have said that, and it has not been persuasive. Why would it be persuasive if you mention our court rather than the Northern District? The injunction is against the state, not against private employers. One of the fundamental axioms of law school, Your Honor, is that the Second Circuit as a federal appeals court carries more weight in the decisions that it issues. My hope would be that if this court issued a injunction, that it would carry the necessary weight to curb the damage that Governor Hochul was doing by her public comments. I believe I ran out of time, Your Honor, so if there are no further questions... You've reserved two minutes for rebuttal. Mr. Wu? Thank you, Your Honors. May it please the Court, Stephen Wu for the State. I want to begin by saying that DOH is in full compliance with Northern District's temporary restraining order, and that temporary restraining order only prevents the State from interfering with the grant of religious exemptions by employers. The State has not done so in any way, and so we're in compliance with that TRO as it stands. We're here today to argue that this court shouldn't grant its own stay against the religious exemption portion of this emergency regulation. I mean, under the precedence from both this court and the Supreme Court, a rule like this one does not have to have religious exemption because it has two features that this court has recognized. One, the rule is neutral on its face. It doesn't target or display any hostility to religion. And two, the rule is generally applicable, and it's generally applicable because it applies to all covered entities and all covered personnel who basically engage or interact with either other personnel or with patients at the facility. Remind me, does it cover people with medical excuses? Are they prohibited? So the one exception in this rule, which I do want to talk about, is the medical exemption. Isn't that kind of the basic problem we have here and the basic difference between this and the city and the schools, which kind of flow right through here without pebbles? Well, it's not different from the vaccination mandate for public school children, which also doesn't have a religious exemption, and that was removed in 2018. But the medical exemption here is quite a narrow one, and it doesn't trigger the concerns that were animated in the Supreme Court in Roman Catholic Diocese and Agedath Israel because what those cases were concerned about was disparate treatment of otherwise comparable claims for exemption. And here the medical exemption is simply not comparable to the religious exemption for at least two reasons. One is in contrast to the exemptions that were granted to secular businesses in Roman Catholic Diocese. This is not an exemption that undercuts the purpose of at least one of the principal purposes of the mandate, which is to protect the health of the health care workers themselves and to ensure that they don't become unavailable to work because of a medical reason. If somebody is hurt because of the vaccine, that makes them unavailable just as much as if they got sick. But they still pose a risk to patients, right? So that's in tension with another purpose. So, yes. So there is, I mean, I don't want to move too much away from that. Let me ask you something further about that, which is I heard a doctor on television a few days ago, a doctor from the CDC, a top doctor from the CDC or the FDA, I think it was CDC, who was asked whether the vaccine itself was harmful to people, could be harmful to people. And the answer that this doctor gave, which I think he was speaking for the agency, is that there's only a tiny number of people who would be harmed by it. And they would be people who have a very specific allergy to something that's in the vaccine. And that would be very, very few people. So it seems to me you haven't said anything about this in your brief, but it seems to me that if this is correct, and if the CDC has exposed this, the government has exposed this as the health risks from the vaccine, then it seems to me that allowing a health exemption would allow an exemption for only a tiny number of people, whereas allowing an exemption on a religious basis would allow an exemption for much larger numbers of people. And I wonder whether that is also part of an argument that justifies the neutrality, that there are specific reasons why the one exemption has a much greater potential damage than the other, in addition to the reason you were giving. I wonder whether... Just to add to that, I was also wondering if you could give us a sense of relative personnel who are seeking and being granted exemptions under both. Sure. So I can answer all of these questions. Yes, it's exactly the case that the medical exemption is much narrower in scope for the reason that you gave. And I think this answers the concerns that medically exempt personnel pose the same transmission risk. They simply don't. The scope of the medical exemption is limited to those who have very serious contraindications to COVID-19 or to its components, which are severe allergic reactions of a certain type. And so just the sheer numbers of it, which I'll mention in a minute, are quite different than it would be the case for a religious exemption. Wouldn't it be helpful if we had some factual material to go on? Let's get the CDC head and get him under oath and have him say what he said on We're dealing with stuff that's in the air around here and things that you say. And I know it happens so quickly, you can't put it together the way you put together an antitrust case. But we have precious few real facts to work on. Yeah, I don't disagree with that. I do think the paucity of the record here warrants against issuing an emergency stay against this statewide regulation. And so that would weigh against plaintiff's request here. So when this case is heard on appeal, this is simply on a pre-appeal motion. That's correct. In this case, and you are briefing this case on appeal, will you be supporting the proposition that we were just discussing? That the health exemption would exempt a tiny number of people in comparison to the... Would you be citing statistics that support that argument? We absolutely would be. And the same evidence is being submitted in other proceedings across the state right now, including the Northern District proceeding. But I do want to get to two other points about the narrowness here. In addition to having narrow scope, because only a few contraindications would support a medical exemption, medical exemptions are also meant to be limited in duration. The regulation itself on its face requires any medical exemption to list its duration. And the CDC's guidelines, which you are referencing, say that the majority of contraindications are limited in time. If somebody is undergoing chemotherapy or is in a serious illness, and the recommendation is to defer the vaccination, not to grant a permanent exemption from it. And in terms of the numbers, because this rule just came into effect and is subject to the TRL, we do not have concrete numbers about this rule. But just to give you some indication, the general understanding in this field is that religious exemptions always exceed by a significant number of medical exemptions that are granted. In the Eastern District case, New York Presbyterians submitted a declaration showing that they had granted 200 medical exemptions, but they had received 1,400 requests for religious exemptions. So 200 doesn't, you know, who knows, is 200 a big number? I'm not sure how I know that. It may be one-seventh as much as religious, but I mean, it's so hard for us to judge these numbers out just in the air. Let me ask you this question, and I hope your adversary will respond, assuming it's a reasonable question. And then let's talk about the equities here. Why does it matter? What happens if we do grant the temporary injunction in the real world? What happens versus if we don't grant it? Because I think we're balancing equities in that way, and I'm not sure how to do that. Yeah, so there are two answers to that. I mean, one is that there is the TRO in place from the Northern District and actually from now two state court orders as well. And we made this point in our brief. It doesn't have an impact. The state is going to comply with those TROs. When they ripen into PIs, one or the other side may or may not take an appeal at that point. So I don't believe there's an immediate practical impact from this Court's ruling, and that's one of the equitable factors. But we think even without those TROs, the balance of the equities would support the state here. I mean, what this Department was very serious concern raised by the Delta variant, which is far more transmissible than previous variants, has really swamped the diagnoses that are taking place across the state. And this order was issued to ensure that healthcare workers in these facilities who are dealing with particularly vulnerable populations will be protected themselves and will not themselves be a vector for further spread in these facilities. And so that sort of public interest overwhelms what we've been discussing, which is a relatively small number of exemptions that are being proposed. Before your timer runs out, can I ask you about—my understanding is that the initial version of Section 2.61 did include religious exemptions, and I'm wondering if you can tell us why it was removed or what the thought process was behind that. Yeah, I think there's a misunderstanding about that process, Judge Park. The initial version that you're referencing was a summary action that was issued by the Commissioner himself under his emergency authority, I think just days before the emergency rule here. I mean, it didn't go through the full regulatory process in the way that this emergency rule did. And this emergency rule was issued with a hearing by the Public Health Council and with all the regulatory documents that are needed. I'm sorry, I'm not familiar enough with the regulatory approval process to understand what you're— Yeah, so under Public Health Law 16, the Commissioner has discretion to issue emergency orders to deal with imminent crises. And the August 18th order that you're referencing was that summary action. It was done just by himself and out of his office. I think in parallel with that process, the Public Health Council, which is a component of DOH, was considering and debating this broader rule, which it would put through the formal regulatory process, similar to what the APA does in the federal system. And that's the rule that we're looking at now. And is there any in the final rule? I don't think they considered—I don't think the Department considered the Commissioner's emergency order to be sort of precedent that they had to distinguish at that point. What I will say is that there was a desire to make this COVID-19 vaccine mandate consistent with the vaccine mandates for measles and rubella, which also contain only a medical exemption, but not a religious exemption. Consistent with what? With the pre-existing mandates for measles and rubella. So those vaccination requirements for health—for these same healthcare workers also does not contain a religious exemption. And is there anything that we could take notice of to—that reflects that was part of the decision process, making process? I believe that's referred to in either the regulatory impact statement or some of the statements around this rule. We can certainly get that to you if it's not in our the measles mandate. Was that challenged in the courts? I don't believe that one was challenged in the courts. Was there any challenge in the courts to any vaccine mandate that, like this one, exempted health but not religion? In this circuit, not so much. I think the Fourth Circuit upheld, in the Mingo case, a mandate that didn't include a religious exemption. But when this court was state law requiring school children to be vaccinated in Phillips v. City of New York, it upheld that one. That mandate did contain a religious exemption. But this court's decision made clear that the religious exemption went beyond what the Constitution required. And so it was not a mandatory feature of that. And in 2018, as I said, the New York legislature removed the religious exemption from public school children. And so that one still remains with only a medical exemption here. And I do, if I could, I do want to sort of complete the argument for why the limited nature of the medical exemption doesn't trigger the concerns for Mormon Catholic Diocese and Tandon v. Newsom. And that's because those cases were, as I said, worried about disparate treatment of comparable exemptions. And here, because the medical exemption serves rather than undermines the purpose of the vaccine mandate and is far more It doesn't raise the concerns that the Supreme Court identified, which is that decision-makers were valuing nonreligious concerns over religious concerns. Instead, the medical exemption here is a very narrow and limited exemption that serves the purposes of the mandate. And the religious exemption requested by plaintiffs is simply not comparable to that level of exemption. Thank you. Thank you, counsel. Mr. Atkinson, we've given you two minutes for a vote on. Thank you, Judge. Can I ask you to respond? And I'm sure if I take up too much of your time, the presider will help you out. But to respond, the notion is that there are three injunctions that are now in place, two from state courts and one from the Northern District. And we're on the 12th of October. We should also have an injunction because we're the Court of Appeals, is that your theory? No, Your Honor. That would be a frivolous reason, in my view. The reason this Court should absolutely issue such an injunction is my client shouldn't be their claims fairly. They're on a ticking clock. As soon as that clock swings in the direction of the orders being lifted or being denied in the district courts, my clients are left hung out to dry. They're fired on the spot the next day. Why is that? I'm still not sure why our injunction changes their position if there are already three essentially identical injunctions. And remember, temporary injunctions for another 13 days is what we're talking about. Your injunction would establish continuity over the briefing process, over the process of their appeal being heard in this court. And again, they should not be dependent on proceedings to which they're not a party to have their rights protected. The one point that I want to make in response to your question, sir, about the equities, is the Supreme Court already talked about this in tandem. The risks being comparable and the equities being comparable does not look at what reasons, what viable reasons, what good reasons might be underlying a mandate. It looks at risk. And if the risks are comparable, that's what matters. COVID's not going to ask you why you don't have a vaccine. It's going to infect you one way or another. And if you're going to be a pollinator, you're going to be a pollinator whether you... I want to make sure that we understand each other. I was only talking about not the merits at all. I was talking about whether what's the result of our practical result of our granting a temporary injunction versus the for the next 12 days. I understand that, Your Honor. And my position is that the Supreme Court in tandem said that to answer that question, it's a risk-based assessment on whether risks are comparable or not. Thank you, Your Honors. Thank you, counsel. We'll take the matter under advisement.